# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARLA BUCK**, *et al.* | : **CIVIL ACTION** |
| v. | : **NO. 19-837** |
| **ENDO PHARMACEUTICALS, INC.,** *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                       **April 29, 2019**

Unable to file new claims in the well-managed pelvic mesh multi-district litigation, persons claiming recent injury from American Medical Systems, Inc.'s pelvic mesh system must pursue claims in the most appropriate federal or state court. We today address products liability claims of Oregonians against Minnesotan American Medical Systems arising from a 2014 implanting of the pelvic mesh system in California. The only nexus here is the Oregonians also sue American Medical Systems' shareholder, a Delaware corporation with a principle place of business in this District. The shareholder now moves to dismiss arguing its only involvement is owning stock in American Medical Systems which manufactured the pelvic mesh system. American Medical Systems moves to partially dismiss strict liability claims for design defect and failure to warn under Pennsylvania law. Under Pennsylvania law, we agree with American Medical Systems and its shareholder. We predict, consistent with every judge to date, Pennsylvania will not recognize strict liability claims for design defect and failure to warn in medical devices. And as the Oregonians do not attempt to pierce American Medical Systems' corporate veil but instead argue succession theory, we must dismiss claims against the shareholder as there is no plead basis for successor liability because it bought shares in the Minnesota corporation which continues the same business and its consolidated financial statements report all liabilities.

## I. Alleged facts.

In or before 2001, Minnesota citizen American Medical Systems, Inc. developed the Sparc Sling System, an implantable pelvic mesh system to treat pelvic organ prolapse and stress urinary incontinence.[1] American Medical began marketing the Sparc Sling in 2001.[2]

On June 17, 2011, Endo Pharmaceuticals purchased all American Medical's stock and it became "a wholly-owned subsidiary of Endo."[3] Endo did not make American Medical a division of its businesses. It bought American Medical stock but there is no suggestion of it managing the company or assuming its day to day operations. American Medical's shares changed ownership. While Endo purchased American Medical's liabilities, "including all that may be related to products liability,"[4] there is no allegation of Endo managing American Medical or selling its products.

On January 7, 2014, a California doctor implanted Oregon citizen Darla Buck with the Sparc Sling at Kaiser Permanente Medical Center in Sacramento, California to treat her urinary incontinence.[5] Over four years later on February 13, 2018, Mrs. Buck went back to Kaiser Permanente complaining of pain and discomfort.[6] Mrs. Buck went back again on March 21, 2018 complaining of pain.[7] By November 5, 2018, the California doctor surgically removed eroded mesh.[8] Mrs. Buck alleges she suffered pelvic pain, dyspareunia, stress urinary incontinence because of the Sparc Sling manufactured by American Medical.[9]

Mrs. Buck sues American Medical and its shareholder Endo alleging the Sparc Sling caused her injuries. She sues under a strict liability theory alleging manufacturing defect, design defect, and failure to warn. She also sues American Medical and Endo for negligence, fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, negligent infliction of emotional distress, breach of express and implied warranty, violation of the Pennsylvania

2

Consumer Protection Act, gross negligence, and unjust enrichment. Mr. Buck sues Endo and American Medical for loss of consortium.

## II. Analysis.[10]

American Medical moves to partially dismiss Mrs. Buck's strict liability design defect and failure to warn claims arguing Pennsylvania law does not provide relief under these theories for allegedly defective medical devices. It also moves to dismiss Mrs. Buck's breach of implied warranty and Pennsylvania Consumer Protection Act claims. In response, Mrs. Buck withdraws her implied warranty and Consumer Protection Act claims. But she argues Pennsylvania law provides a cause of action for her strict liability design defect and failure to warn claims. The Bucks and American Medical argue under Pennsylvania law even though the Bucks are Oregonians and American Medical is a Minnesotan.

Endo separately moves to dismiss the Amended Complaint in its entirety arguing Mr. and Mrs. Buck cannot sue it for the acts of subsidiary American Medical. Mr. and Mrs. Buck argue they can sue Endo under a successor liability theory recognized by Pennsylvania law even though Endo's internal affairs are governed by Delaware law. The Bucks do not plead facts suggesting they hope to pierce the corporate veil of American Medical under Minnesota or Pennsylvania law.

We agree with Endo as to the Bucks' failure to plead successor liability and dismiss the Amended Complaint against Endo. We also agree with American Medical as to a lack of a claim under the selected Pennsylvania law for strict liability design defect and failure to warn.

### A. We dismiss the Amended Complaint as to Endo Pharmaceuticals.

Endo argues we cannot hold it liable for the acts of its subsidiary American Medical. Endo argues Mr. and Mrs. Buck admit Endo acquired American Medical in a stock purchase and American Medical "became a wholly-owned subsidiary of Endo."[11]

3

Both parties rely on Pennsylvania law even though Endo is a Delaware corporation and American Medical is a Minnesota corporation. Holding a Delaware corporation liable arising under a corporate successor theory may require applying Delaware law. Piercing the corporate veil of American Medical may require applying Minnesota law. But both parties argue Pennsylvania law applies. When the parties agree a state's law applies, we apply the agreed-to law.[12] We are obliged to follow their choice.

Mr. and Mrs. Buck argue they have sufficiently plead facts allowing us to hold Endo liable under exceptions to the general rule in Pennsylvania against successor liability claiming (1) Endo expressly or implied assumed American Medical's liabilities or (2) Pennsylvania's "product line" exception to the general rule against successor liability applies.

### 1. The Bucks' theory of successor liability fails as a matter of law.

Mr. and Mrs. Buck argue we may hold Endo liable for American Medical's defective product under exceptions to the general rule against successor liability. Endo argues no exception to the rule against successor liability applies since Endo purchased American Medical as a wholly-owned subsidiary.

As general rule, "when one company sells or transfers all of its assets to a successor company, the successor does not acquire the liabilities of the transferor corporation merely because of its succession to the transferor's assets."[13] But there are exceptions to the general rule. We may hold a purchaser liable if: "(1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor; (2) the transaction amounts to a consolidation or de facto merger; (3) the purchasing corporation is merely a continuation of the transferor corporation; or (4) the transaction is fraudulently entered into to escape liability[.]"[14]

4

Endo argues it acquired American Medical as a subsidiary and thus we cannot hold it liable for the acts of its subsidiary. We agree. Our colleague Judge Pratter's decision in *Binder v. Weststar Mortgage, Inc.* applying Pennsylvania law is instructive in evaluating successor liability with a parent corporation and its subsidiary.[15] In *Binder*, the plaintiff sued his mortgage company under various consumer protection laws alleging the mortgage company committed errors when servicing his mortgage leading to increased mortgage payments. The plaintiff sued the mortgage company's parent, alleging because the parent acquired the mortgage company, the court could hold the parent liable as the mortgage company's successor. Judge Pratter explained the parent's ownership of the mortgage company as a wholly-owned subsidiary does not justify successor liability against the parent. Judge Pratter quoted our Court of Appeals' explanation of the relationship between parent and subsidiary:

> The corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation. These principles are equally applicable when the shareholder is, in fact, another corporation, and hence, mere ownership of a subsidiary does not justify the imposition of liability on the parent.[16]

The same principle applies here. We cannot hold Endo liable merely because it purchased American Medical and now holds American Medical as a wholly-owned subsidiary. The parent-subsidiary relationship is insufficient to hold Endo liable for the acts of its subsidiary.

We cannot apply successor liability for a more fundamental reason as well: the original entity—American Medical—still exists. As our colleague Judge Goldberg explained, "[i]f the original entity still exists . . . there is no successor, and therefore no successor liability."[17] American Medical still exists, sold the product and is the named defendant in these same lawsuits throughout the United States. Endo is not the successor to American Medical, it is merely the owner of American Medical. We cannot hold Endo liable as a successor to American Medical.

### 2. The Bucks fail to allege facts showing Endo expressly or impliedly assumed American Medical's liabilities.

The Bucks argue we may hold Endo liable as successor to American Medical because Endo expressly or impliedly assumed American Medical's obligations. They allege "Endo purchased all of [American Medical]'s liabilities including all that may be related to products liability claims."[18] But they merely conclude Endo's assumption of liability without understanding the mechanics of a stock purchase. They admit American Medical became a wholly-owned subsidiary of Endo through the June 17, 2011 merger.[19] In other words, Endo became the sole shareholder of American Medical. Endo only purchased American Medical's liabilities in the sense it became the owner of American Medical. But as Judge Pratter explained, the corporate form shields Endo from American Medical's liabilities.

To hold Endo liable under the of assumption of liabilities exception, Mr. and Mrs. Buck need to allege Endo assumed American Medical's liabilities and obligations as to *Endo*. They allege no facts allowing us to reasonably infer Endo expressly or impliedly assumed American Medical's liabilities. While they point to Endo's consolidated financial statements, these statements reflect Endo and American Medical's joint financial condition. They fail to show Endo assumed the obligations as to itself. Mr. and Mrs. Buck further allege the following passage from the consolidated financial statements "makes clear" Endo purchased American Medical's liabilities: "Reflects (1) an adjustment to remove [American Medical]'s $4.4 million product liability reserve. In accordance with ASC 805, the fair value of the pre-acquisition contingency related to product liability cannot be reasonably estimated or determined."[20] We fail to see how this statement in a joint financial document shows Endo assumed American Medical's liabilities.

Mr. and Mrs. Buck's theory Endo assumed its subsidiary's liabilities defies corporate logic. In discussing successor liability when a corporation purchases another corporation's stock, Judge

Newcomer explained the purchasing corporation "does not thereby assume the liabilities of the acquired corporation unless it does so expressly."[21] Nowhere has Mr. and Mrs. Buck alleged Endo expressly assumed American Medical's liabilities. A sentence in a joint consolidated financial statement showing the elimination of product liability reserves does not show Endo expressly assumed American Medical's liabilities.

As the Bucks' experienced counsel conceded at oral argument, they cannot explain why they would sue Endo other than it is a shareholder of American Medical. He had no answer as to why we should transform corporate law—including possibly Minnesota or Delaware law—to allow injured parties to sue shareholders of an ongoing business for the business's alleged conduct. Mr. and Mrs. Buck fail to allege Endo assumed American Medical's liabilities.

### 3. The Bucks fail to show Endo liable under the "product line" exception.

Mr. and Mrs. Buck argue we can hold Endo liable under Pennsylvania's "product line" exception to the general rule against successor liability. The product line exception applies when "a corporation buys substantially all of the assets of a corporate manufacturer and thereafter continues essentially the same manufacturing operation[.]"[22] Under Pennsylvania law, we may hold a successor liable under the product line exception when three factors are present:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business; (2) the successor's ability to assume the original manufacturer's risk-spreading role; and (3) the fairness of requiring the successor to assume responsibility for defective products as a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.[23]

In *Forrest*, the plaintiff injured his arm in a machine developed and manufactured by Beloit. Some years earlier, Harnischfeger acquired Beloit as a wholly-owned subsidiary. The plaintiff sued both Beloit and Harnischfeger arguing the court could hold Harnischfeger liable under the successor liability theory. The court rejected the plaintiff's argument explaining the

7

plaintiff failed to show it lacked a remedy against Beloit, the original manufacturer. Explaining "the loss of a remedy against the original manufacturer must be a prerequisite to the invocation of the product line exception," the court found the plaintiff could recover against Beloit, as evidenced by the fact the plaintiff named Beloit in his lawsuit.[24]

Mr. and Mrs. Buck fail to allege she lacks a remedy against the original manufacturer American Medical. In fact, they sue American Medical and, as their counsel confirmed at oral argument, can potentially recover from American Medical assuming they have a meritorious claim. Even assuming we could apply Pennsylvania's product line exception, they fail show it applies because they have a remedy against the original manufacturer.

Mr. and Mrs. Buck cite *Dawejko v. Jorgensen Steel Company* to argue we can hold Endo liable.[25] In *Dawejko*, the defendant acquired the predecessor's assets and ran the predecessor's lifting machine manufacturing business as a division of the defendant corporation. After the acquisition, the predecessor ceased operations. The plaintiff later suffered an injury from a lifting machine manufactured by the predecessor. In *Dawejko*, the Pennsylvania Supreme Court adopted the "product line" exception to the general rule against successor liability from a New Jersey Supreme Court case:

> (W)here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.[26]

The Pennsylvania Supreme Court affirmed the lower court holding the defendant liable since it continued the predecessor's business and sold the lifting machines as the predecessor had done. But *Dawejko* is distinguishable. Mr. and Mrs. Buck admit Endo acquired American Medical as a wholly-owned subsidiary. American Medical did not cease operations. Endo did not acquire

8

American Medical's assets and continue American Medical's business as a division of Endo. American Medical continued manufacturing and selling the Sparc Sling itself. *Dawejko* does not entitle Mr. and Mr. Buck to recovery from Endo.

Mr. and Mrs. Buck also cite *Aubrey v. Precision Airmotive LLC*.[27] In *Aubrey*, the defendant argued it could not be liable for the defective product. The defendant purchased the product line after its predecessor made the defective product. The Pennsylvania Superior Court affirmed the trial court's denial of summary judgment finding a disputed issue of fact as to whether the defendant assumed the predecessor's liabilities. *Aubrey* is distinguishable. In *Aubrey*, the defendant purchased the predecessor's product line and continued the line under the defendant's business. Unlike the defendant in *Aubrey*, Endo did not purchase a product line from American Medical. Endo purchased American Medical's stocks and American Medical became a wholly-owned subsidiary of Endo. American Medical continued to manufacture the Sparc Sling.

Even assuming we could apply the product line exception under Pennsylvania law, Mr. and Mrs. Buck fail to allege facts showing she cannot recover from American Medical, the original manufacturer of the allegedly defective product. Her claims against Endo fail. We dismiss the Amended Complaint as to Endo.[28]

As the Bucks' counsel admitted at oral argument, amending the complaint to allege another Endo entity on the same theories is futile. The Bucks sued the correct party. For unknown reasons, they also sued American Medical's shareholder. They understandably cannot plead the shareholder becomes liable for the entity's conduct absent some form of piercing the corporate veil. They do not allege a piercing theory. The successor theory does not apply when the only difference in American Medical's potential liability is a change in its shareholder ownership. Change of ownership—as occurs every day in the market—does not make the new owner liable

9

absent pleading an exception recognized by either Pennsylvania or Delaware law (as Endo is a Delaware corporation). We dismiss the Amended Complaint as to Endo.

### B. We dismiss Mrs. Buck's strict liability design defect and failure to warn claims against American Medical.

American Medical moves to dismiss Mrs. Buck's strict liability design defect and failure to warn claims under Pennsylvania law. Mrs. Buck argues we can recognize strict liability claims for defective medical devices under Pennsylvania law.

Before we address the parties' arguments, we discuss the applicable law. Both American Medical and Mrs. Buck argue Pennsylvania law applies to her product liability claims. But a California doctor implanted the allegedly defective device, the same California doctor removed the device, and Mrs. Buck resided and still resides in Oregon. Mrs. Buck seeks to hold a Minnesota corporation liable for a defective product used in California on an Oregon citizen. California, Oregon, or even Minnesota law may apply to her product liability claims. But as explained, we apply the law the parties agree applies.[29] We are obliged to apply Pennsylvania law to Mrs. Buck's product liability claims. We do not opine on the sufficiency of Mrs. Buck's claims under another state's laws not addressed by the parties.

While the Pennsylvania Supreme Court has not yet ruled on the issue, numerous courts in our Circuit applying Pennsylvania law hold a plaintiff cannot bring strict liability design defect or failure to warn claims for a defective medical device.[30] The Pennsylvania Superior Court held the same in *Creazzo v. Medtronic, Inc.*[31] In *Creazzo*, the plaintiff sued the manufacturer of a defective medical device for strict liability.[32] The trial court dismissed the strict liability claims. The Pennsylvania Superior Court affirmed dismissal explaining the Pennsylvania Supreme Court barred strict liability claims for prescription drugs under Comment k to the Restatement (Second) of Torts, Section 402A:

10

> There are some products, which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs . . . Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous . . . The seller of such products. . . is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.[33]

While the Pennsylvania Supreme Court has not extended the bar to strict liability claims for medical devices, the Pennsylvania Superior Court found "no reason why the same rational[e] applicable to prescription drugs may not be applied to medical devices."[34]

Mrs. Buck cites several cases holding a plaintiff can bring a strict liability manufacturing defect claim under Pennsylvania law alleging a defective medical device.[35] But American Medical does not move to dismiss her strict liability manufacturing defect claim. She cites no authority allowing strict liability design defect or failure to warn claims under Pennsylvania law for medical devices.

Distinguished judges in our District barred strict liability claims under Pennsylvania law alleging a defective medical device. In *Terrell*, Judge Slomsky predicted the Pennsylvania Supreme Court would bar strict liability claims for medical device cases.[36] Judge Slomsky explained the Pennsylvania Supreme Court adopted Section 402A of the Restatement of Torts with respect to strict liability claims. He explained Comment k to Section 402A bars strict liability claims for certain products. Judge Slomsky then explained the Pennsylvania Supreme Court cited Comment k in barring strict liability claims alleging defective prescription drugs.[37] Judge Slomsky explained in 2014, the Pennsylvania Supreme Court again reiterated it "has declined to extend strict liability into the prescription drug arena."[38] Like the Pennsylvania Superior Court in *Creazzo*, he predicted the Pennsylvania Supreme Court would likely extend the bar to medical devices.

In *Wilson v. Synthes USA Products, LLC*, Judge Schmehl agreed with Judge Slomsky and held plaintiffs could not bring strict liability claims under Pennsylvania law for defective medical devices.[39] He explained, while the Pennsylvania Supreme Court barred strict liability claims for prescription drug cases, it had not yet barred these claims for medical device cases. But Judge Schmehl explained the policy rationale for exempting prescription drugs from strict liability applies equally to medical devices since "both are unreasonably dangerous but should not be subjected to strict liability because they benefit certain members of society."[40]

We agree with Judge Slomsky and Judge Schmehl the Pennsylvania Supreme Court would bar strict liability claims for defective medical devices. Mrs. Buck's strict liability design defect and failure to warn claims under Pennsylvania law fail. She fails to cite caselaw allowing strict liability design defect and failure to warn claims under Pennsylvania law. The authority she cites only allows strict liability manufacturing defect claims. The Pennsylvania Supreme Court prohibited strict liability claims for prescription drugs for policy reasons. Since, like prescription drugs, the benefits provided by medical devices outweigh the risk of potential harm, the Pennsylvania Supreme Court would likely apply the same policy argument concerning prescription drugs to medical devices. We dismiss Mrs. Buck's strict liability design defect and failure to warn claims.

American Medical does not move to dismiss Mrs. Buck's strict liability manufacturing defect claim. This claim will proceed.[41]

### III. Conclusion.

In an accompanying Order, we dismiss Mr. and Mrs. Buck's Amended Complaint as to Endo Pharmaceuticals. We dismiss Mrs. Buck's breach of implied warranty and Pennsylvania

12

Consumer Protection law claims as withdrawn. We dismiss Mrs. Buck's strict liability design defect and failure to warn claims without prejudice.

---

[1] ECF Doc. No. 3 (Amended Complaint) ¶¶ 15-18.

[2] *Id.* at ¶ 18.

[3] *Id.* at ¶ 10.

[4] *Id.* at ¶ 11. Endo's Unaudited Pro Forma Condensed Combined Financial Statement shows "an adjustment to remove [American Medical]'s $4.4 million product liability reserve. In accordance with ASC 805, the fair value of the pre-acquisition contingency related to product liability cannot be reasonably estimated or determined." *Id.* at ¶ 11.ii

[5] *Id.* at ¶ 23.

[6] *Id.* at ¶ 24.

[7] *Id.* at ¶ 25.

[8] *Id.* at ¶ 28.

[9] *Id.* at ¶ 30.

[10] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[11] ECF Doc. No. 3 ¶ 10.

13

[12] *See, e.g., Case v. Am. Standard, Inc.*, No. 11-04164, 2013 WL 5548810, at *1 n.1 (E.D. Pa. Aug. 1, 2013) (applying parties' agreed-upon law in product liability case); *Williams Crane & Rigging, Inc. v. Northbrook Prop. & Cas. Ins. Co.*, No. 93-4266, 1996 WL 134800, at *2 (E.D. Pa. Mar. 26, 1996) (applying parties' agreed-upon law for issues of contract interpretation).

[13] *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106, 107 (Pa. Super. Ct. 1981). Mr. and Mrs. Buck argue Pennsylvania law applies. We question whether Pennsylvania law applies to Endo, a Delaware corporation, to determine liability for its subsidiary's acts. We need not apply a choice of law analysis here since Delaware's law concerning successor liability is the same. *See Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 540 (D. Del. 1988).

[14] *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308-09 (3d Cir. 1985). Delaware applies the same exceptions to the general rule against successor liability. *See Elmer*, 698 F. Supp. at 540.

[15] *Binder v. Weststar Mortg., Inc.*, No. 14-7073, 2016 WL 3762710 (E.D. Pa. July 13, 2016).

[16] *Id.* at *4 (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001)).

[17] *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-2445, 2017 WL 4810801, at *7 (E.D. Pa. Oct. 25, 2017).

[18] ECF Doc. No. 3 ¶ 11.

[19] *Id.* at ¶ 10.

[20] *Id.* at ¶ 11.ii.

[21] *See Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 840-41 (E.D. Pa. 1997); *see also Roy v. Bolens Corp.*, 629 F. Supp. 1070, 1073 (D. Mass. 1986) ("Since the justification for imposing strict liability upon a successor corporation is said to rest upon 'the virtual destruction of the plaintiff's remedies against the original manufacturer by the successor's acquisition of the business,' it would seem to follow that where, as here, the predecessor corporation is alive and well and able to respond in damages, no successor liability at all ought be imposed.").

[22] *Forrest v. Beloit Corp.*, 278 F. Supp. 2d 471, 477 (E.D. Pa. 2003) (quoting *LaFountain v. Webb Indus. Corp.*, 951 F.2d 544, 547 (3d Cir. 1991)).

[23] *Id.*

[24] *Id.* (quoting *Conway v. White Trucks, A Div. of White Motor Corp.*, 885 F.2d 90, 95 (3d Cir. 1989)).

[25] *Dawejko*, 434 A.2d at 106.

[26] *Id.* at 110 (quoting *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811, 825 (N.J. 1981)).

[27] *Aubrey v. Precision Airmotive LLC*, 7 A.3d 256 (Pa. Super. Ct. 2010).

[28] Mr. and Mrs. Buck do not argue, and we do not find, an allegation supporting an alter-ego theory of liability against Endo.

[29] *See, e.g., Case*, 2013 WL 5548810, at *1 n.1 (applying parties' agreed-upon law in product liability case); *Williams Crane & Rigging, Inc.*, 1996 WL 134800, at *2 (applying parties' agreed-upon law for issues of contract interpretation).

[30] *Wallace v. Bos. Sci. Corp.*, No. 18-01839, 2018 WL 6981220, at *6 (M.D. Pa. Nov. 29, 2018), *report and recommendation adopted*, No. 18-1839, 2019 WL 137605 (M.D. Pa. Jan. 8, 2019) (dismissing strict liability design defect and failure to warn claims under Pennsylvania law); *Carson v. Atrium Med. Corp.*, 191 F. Supp. 3d 473, 477 (W.D. Pa. 2016) ("[T]he Court will apply Comment k, without exceptions, to medical devices."); *Wilson v. Synthes USA Prod., LLC*, 116 F. Supp. 3d 463, 467 (E.D. Pa. 2015) (dismissing all strict liability claims under Pennsylvania law alleging a defective medical device); *Terrell v. Davol, Inc.*, No. 13-5074, 2014 WL 3746532, at *5 (E.D. Pa. July 30, 2014) (dismissing Pennsylvania strict liability manufacturing defect claim); *Geesey v. Stryker Corp.*, No. 09-2988, 2010 WL 3069630, at *5 (E.D. Pa. Aug. 4, 2010) (no strict liability claims under Pennsylvania law for medical devices).

[31] *Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 31 (Pa. Super. Ct. 2006).

[32] *Id.* at 30.

[33] Comment k to Restatement (Second) Torts § 402A.

[34] *Creazzo*, 903 A.2d at 31.

[35] *Wagner v. Kimberly-Clark Corp.*, 225 F. Supp. 3d 311, 317 (E.D. Pa. 2016) ("There is every good reason to believe the Pennsylvania Supreme Court would extend its product liability jurisprudence to manufacturing defects in medical devices."); *Bergstresser v. Bristol-Myers Squibb Co.*, No. 12-1464, 2013 WL 1760525, at *3 (M.D. Pa. Apr. 24, 2013) ("[A]ny strict liability claim brought by the plaintiff for failure to warn or design defect are barred by *Hahn* and its progeny. However, to the extent that the plaintiff attempts to bring a strict liability claim based upon a manufacturing defect, this claim would not be barred."); *Killen v. Stryker Spine*, No. 11-1508, 2012 WL 4498865, at *4 (W.D. Pa. Sept. 28, 2012) (allowing strict liability manufacturing defect claim to proceed but dismissing strict liability design defect and failure to warn claims).

[36] *Terrell v. Davol, Inc.*, No. 13-5074, 2014 WL 3746532 (E.D. Pa. July 30, 2014).

[37] *Id.* at *4 (citing *Hahn v. Richter*, 563, 673 A.2d 888, 891 (Pa. 1996)).

[38] *Id.* (quoting *Lance v. Wyeth*, 85 A.3d 434, 453 (Pa. 2014)).

[39] *Wilson*, 116 F. Supp. 3d at 463.

[40] *Id.* at 467 (explaining both prescription drugs and medical device cause harm, "but the risks are outweighed by the benefits they provide for patients who need them").

[41] We opine only as to Mrs. Buck's strict liability claims under Pennsylvania law. Should another court determine Mrs. Buck may proceed with her strict liability claim under another state's law, our dismissal of these claims does not prejudice Mrs. Buck to raise these claims then.